# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

MALISSA L. BROWN,                    :          CIVIL ACTION

     Plaintiff,                    :

v.                                   :

CAMDEN COUNTY, GEORGIA; BILL         :
SMITH, Individually and in
his Official Capacity as             :
Sheriff for Camden County,
Georgia; CHARLES BYERLY,             :
Individually and in his
Official Capacity as Deputy          :
Sheriff for Camden County,
Georgia; and KEITH PURCELL,          :
d/b/a Kingsland Meats,
                                     :

     Defendants.                   NO. CV207-69

## O R D E R

Plaintiff, Malissa L. Brown, filed the above-captioned case against Defendants, Camden County, Georgia; Sheriff Bill Smith; Deputy Sheriff Charles Byerly; and Keith Purcell (doing business as Kingsland Meats), asserting numerous federal and state law claims arising out of her arrest and incarceration for allegedly writing bad checks to Purcell.

Presently before the Court are all Defendants' motions for summary judgment and Byerly's motion to dismiss. Because Purcell and Byerly may have seized Brown unreasonably, but because certain other claims are barred as a matter of law,

Defendants' summary judgment motions will be **GRANTED** in part, and **DENIED** in part. Because Byerly may have violated clearly established law, his motion to dismiss the complaint on qualified immunity grounds will be **DENIED**.

## BACKGROUND

Viewing the facts in the light most favorable to Brown, as the Court must at this stage of the proceedings, the facts are as follows.[1] Plaintiff owned Food Source Florida, Inc., a Florida corporation. Around February 2005, Brown began purchasing food from Purcell's business, Kingsland Meats, located in Camden County, Georgia. Purcell delivered wholesale meat to Brown at the warehouse shared by her business, and Icehouse, a business owned by her father,

---

[1] The Court's task in this respect is complicated by the fact that Plaintiff apparently disputes not only the facts of the case as recounted by Defendants, but also the facts recounted in her complaint, her statement in opposition to Defendants' statement of material facts, and her briefs. To reconcile these inconsistencies, the Court accepts as true, for purposes of the motions for summary judgment, the affidavits offered by Brown in support of her case. For the sake of clarity, the Court also relies on Defendants' version of the facts, at least where those facts are not denied by Plaintiff specifically. Indeed, where Defendants' version of the facts is supported by the record and Plaintiff's version is not, the Court credits the former for purposes of summary judgment, regardless of any specific denial by Plaintiff. Scott v. Harris, 127 S. Ct. 1769, 1775-76 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

AO 72A
(Rev. 8/82)

Charles Joyner. The warehouse was located in Blackshear, Georgia, and was owned by Brown's brother, C. David Joyner, a Georgia criminal defense attorney.

In April and May 2005, Brown wrote and delivered three postdated checks to Purcell, with Purcell's assent and agreement to hold such checks for payment in the future.[2] The checks were all drawn on an account Food Source Florida held at Fifth Third Bank. Check No. 5136 was for $9,971.41, and Kingsland Meats deposited it on May 7, 2005. Check No. 5176 was for $7,792.03, and Kingsland Meats deposited it on May 21, 2005. Check No. 5177 was for $7,792.04, and Kingsland Meats deposited it on May 28, 2005. In June 2005, all three checks were returned to Purcell due to insufficient funds.

Thereafter, Purcell relates that he sent three notices to Brown by certified mail, informing her of the bad checks.[3] According to Defendants, on June 17, 2005, the notices were received by Colby Groseclose, who signed for the letters as Plaintiff's agent. Brown denies that she ever received these

[2] Brown contends that, on previous occasions, Purcell agreed to take postdated checks for a promise to pay in the future, and her bank honored those checks. Dkt. No. 19-2, Brown Aff. ¶ 10.

[3] The notices are not in evidence before the Court.

3

notices, but concedes that she learned of the bank's dishonor of the checks, and admits that a Food Source Florida employee signed for the letters from Purcell. After learning of the bank's dishonor of the checks, Brown tried to contact Purcell several times.

After sending the notices, Purcell went to the Camden County Sheriff's Department and spoke with Deputy Sheriff Charles Byerly about the returned checks. Brown denies that Purcell gave Byerly a truthful accounting of his agreement with Brown to hold the checks for future payment.

After the bank refused to honor the checks, Brown sent Purcell two bank checks by overnight delivery for payment of two of the returned checks, and promised to make good on the third. Despite this fact, Purcell sought warrants for Brown's arrest on all three checks.[4]

Brown contends that she received a phone call from Byerly before her arrest, during which she informed the deputy "of her arrangements with Mr. Purcell to cover the checks and I reminded him that the checks were all postdated

---

[4] The parties dispute whether Purcell received the bank checks before Purcell spoke with Byerly initially. "Defendant Purcell . . . supplied the checks to Defendant Byerly knowing that Defendant Purcell had received satisfaction on the check[s] and their fees for check #5136 for [$]9,971.41 and #5176 for $7,792.03[.]" Dkt. No. 19-2, Brown Aff. ¶ 14.

AO 72A
(Rev. 8/82)

and [Purcell] had been accepting postdated checks for many months." Dkt. No. 48, Ex. C, Brown Aff. ¶ 12. According to Brown, Byerly knew that Purcell had accepted the checks postdated when he allegedly sought warrants for her arrest.

Plaintiff also relates that, in May 2005,

> Purcell received the checks in question for 'product[s] he had delivered in March and April with marked dates 'to hold' for later dates in May. Mr. Purcell was also told on the phone when he called and asked me to mail him the checks for April's products that they were postdated as usual.

Dkt. No. 48, Ex. C, Brown Aff. ¶ 13. "When I wrote Mr. Purcell the three postdated checks at issue, Mr. Purcell understood that I did not have the funds available at the time I wrote the checks, agreeing to receive payment in the future." Dkt. No. 48, Ex. C, Brown Aff. ¶ 16. According to an affidavit filed by Brown's brother, C. David Joyner, he "explained in great detail to Defendant Byerly that three postdated checks did not constitute present consideration as required by the deposit account fraud statute." Dkt. No. 48, Ex. A, C. David Joyner Aff. ¶ 10. Joyner also told Byerly that Purcell had accepted many other postdated checks from Brown other than the ones at issue, but Byerly refused to listen and had Brown arrested. Dkt. No. 48, Ex. A, C. David Joyner Aff. ¶¶ 11-13.

5

Although there is some dispute about this fact, apparently, three warrants were issued for Brown's arrest on June 29, 2005. According to an affidavit filed by Camden County Chief Magistrate Judge Harvey L. Fry, the Magistrate Judge issued these warrants on Byerly's application. Dkt. No. 36, Ex. A. Two warrants charged Brown with deposit account fraud, and a third charged her with theft by taking.

On June 30, 2005, deputies in Seminole County, Florida, arrested Brown pursuant to the warrants issued by Judge Fry. Brown contends that Seminole County officials held her at the insistence of Byerly and Purcell, until she paid the third check and other invoices, which were not due at the time of her arrest. Brown and members of her family advised Purcell and Byerly that the other invoices "had nothing to do with [her] arrest." Dkt. No. 19-2, Brown Aff. ¶ 17.

The invoices not yet due totaled over $24,000, and it took Brown and her family several days to get together the total $31,853.65 that Purcell and Byerly demanded. Plaintiff maintains that Defendants' conduct caused her to be incarcerated for at least six days in the maximum security section of the Seminole County Jail. Dkt. No. 1 ¶ 37.

Brown's brother supports her account of the incident. "After my sister's arrest, I had numerous telephone

conversations with Defendants Purcell and Byerly who both

insisted on payment of the returned check [and] also on all

outstanding invoices my sister had with Defendant Purcell."

Dkt. No. 48, Ex. A, C. David Joyner Aff. ¶ 14.

> Based upon my telephone conversations with both
> Defendants Purcell and Byerly, it became clear to
> me that Defendant Purcell knew that he had
> received payment on two (2) of the three (3)
> checks, that his voluntary consent to accepting
> the three (3) post-dated checks took this
> incident out of the criminal arena and placed it
> in the civil arena, and that he remained
> intimately aware of everything that Defendant
> Byerly did regarding seeking warrants and forcing
> payment on invoices on which Defendant Purcell
> had not taken any previous action.

Dkt. No. 48, Ex. A, C. David Joyner Aff. ¶ 15.

In addition, Joyner asserted that Brown was not released

until he and other family members paid the outstanding check

and the other outstanding invoices. Dkt. No. 48, Ex. A, C.

David Joyner Aff. ¶¶ 16-17; see also Dkt. No. 48, Ex. B,

Charles Joyner Aff. ¶¶ 26-28.

Plaintiff's complaint asserts claims under 42 U.S.C. §§

1983, 1985, 1986, and 1988, for violations of her rights

under the Fourth, Eighth, and Fourteenth Amendments.[5]  Brown

---

[5]

As Brown concedes, her Eighth Amendment claims must be dismissed
because she was never convicted of a crime.  Dkt. No. 46 at 10.
Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996)(alleged
mistreatment of arrestees is analyzed under the due process clause of
the Fourteenth Amendment; the Eighth Amendment's bar on cruel and

7

has also asserted state law claims under Georgia law for false arrest, malicious arrest, false imprisonment, malicious prosecution, intentional infliction of mental distress, slander, and negligent hiring and retention.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

unusual punishments applies to such claims by convicted prisoners). Further, Brown concedes that her claims under § 1985 and § 1986 fail because there is no evidence of any racial, or otherwise class-based, animus. Dkt. No. 46 at 11.

Likewise, Plaintiff's substantive due process claims against Defendants under the Fourteenth Amendment fail. In Brown's complaint, she avers a due process violation based on her seizure and incarceration. Dkt. No. 1 ¶ 61. Brown has not sued her jailers in Seminole County, nor asserted that she was mistreated at the jail at any Defendant's behest. Where a claim is covered by a specific amendment, the Court must analyze the case under it, not the rubric of substantive due process. United States v. Lanier, 520 U.S. 259, 272 n.7 (1997). Therefore, of the claims Brown has raised, the Fourth Amendment is Brown's only potentially viable basis for recovery on substantive federal law grounds.

AO 72A
(Rev. 8/82)

The Court must view the facts in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor. . . ", <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).

## DISCUSSION

### I. Fourth Amendment Claims Under § 1983

Title 42, United States Code, Section 1983, a codification of part of the Ku Klux Klan Act of 1871, allows individuals to sue state actors in federal court for constitutional violations. <u>Monroe v. Pape</u>, 365 U.S. 167, 175-84 (1961), <u>overruled on other grounds by</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 663 (1978). In pertinent part, the Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. There are three related inquiries the Court must consider to determine whether Byerly or Purcell have any potential liability for violating the

9

Fourth Amendment, pursuant to § 1983.

First, Byerly and Purcell insist that there was no constitutional violation at all in this case because the arrest was made pursuant to a valid warrant and because there was probable cause to believe that Brown committed the crime of deposit account fraud. Second, Purcell argues that he has no liability under the Fourth Amendment because he was not a state actor. Third, Byerly urges that the law was not clearly established at the time the incident occurred, and that as a result, qualified immunity bars Brown's Fourth Amendment claim as to him.

The Court will consider each argument in turn, pursuant to the "rigid order of battle" established by <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). <u>Scott</u>, 127 S. Ct. at 1774 n.4 (internal quote marks and quoted source omitted).

## A. There is Sufficient Proof of an Underlying Violation

Byerly and Purcell argue that they are entitled to summary judgment because there is no evidence of any underlying constitutional violation. To decide whether Defendants are correct in this assertion, the Court will consider the validity of the warrant issued in the instant

AO 72A
(Rev. 8/82)

case and analyze whether probable cause existed.[6]

i. The Execution of the Warrant Was Invalid

Purcell and Byerly posit that there was a valid warrant issued by Camden County Chief Magistrate Judge Harvey L. Fry, which precludes any liability on their part for violating the Fourth Amendment. Indeed, "an arrest made under authority of a properly issued warrant is simply not a 'false' arrest, it is a 'true' or valid one." Rodriguez v. Ritchey, 556 F.2d 1185, 1193 (5th Cir. 1977)(en banc).[7] Brown maintains that the warrant was not valid (if it existed at all), because Deputy Byerly withheld pertinent facts from the Magistrate Judge.

On June 29, 2005, according to Judge Fry's affidavit, he issued three warrants for Brown's arrest, upon Byerly's

---

[6]
 With respect to the § 1983 liability of Camden County and Smith, Brown relies on her argument that there was no probable cause for her arrest. Yet, Brown has not demonstrated, or even argued, that Byerly's actions were taken pursuant to a policy or custom of either Camden County or Sheriff Smith. Moreover, there is no averment that Sheriff Smith had any personal involvement in, or causal connection to, Brown's arrest. Section 1983 liability cannot be based on the theory of respondeat superior. Monell, 436 U.S. at 690-95. As a result, neither Camden County nor Sheriff Smith is liable for any Fourth Amendment violation. Holloman v. Harland, 370 F.3d 1252, 1263 (11th Cir. 2004).

[7]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

11

AO 72A
(Rev. 8/82)

application. According to Judge Fry, two warrants were for deposit account fraud, and related to check numbers 5136 and 5177. Apparently, no warrant was issued as to check number 5176, but a third warrant was issued for one count of felony theft by taking.[8] Dkt. No. 36, Ex. A.

Judge Fry states in his affidavit that "[i]n order to have issued the warrants[,] sworn testimony, including a signed probable cause affidavit was required.[9] That affidavit is attached to the warrant as signed and issued." Dkt. No. 36, Ex. A, Fry Aff. ¶ 5. Yet, it is undisputed that no one has located the warrants, and Plaintiff has presented evidence that questions whether the warrants ever existed. Dkt. No. 48, Ex. A, C. David Joyner Aff. ¶¶ 18-20.

Notwithstanding the affidavit submitted by Plaintiff's brother, the Court has before it an affidavit from a judicial officer stating that the warrants were issued by him personally. Judge Fry's sworn statement is entitled to some

---

[8]

Defendants do not make any arguments regarding the propriety of Plaintiff's arrest for theft by taking in their dispositive motions. Accordingly, the Court has not considered whether any Defendant is entitled to judgment as a matter of law based on that charge.

[9]

Indeed, a warrant is not valid under the Fourth Amendment unless it is supported by probable cause. "No Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons . . . to be seized." U.S. Const. amend. IV; Payton v. New York, 445 U.S. 573, 602-03 (1980).

12

AO 72A
(Rev. 8/82)

respect, and the Court will assume, _arguendo_, that the warrants existed. Nonetheless, the warrants were invalid as a matter of law because they were executed outside the territorial jurisdiction of the issuing court—that is, in Florida.

> A warrant issued in one state may not be executed in another state, for it has no validity beyond the boundaries of the state by whose authority it was issued. A peace officer has no official power to arrest beyond the territorial boundary of the state, city, county or bailiwick for which the officer is elected or appointed.

5 Am. Jur. 2d _Arrest_ § 29 (2007); Ga. Code Ann. § 17-4-44; _Coker v. State_, 14 Ga. App. 606, 607 (1914); _see also_ 70 Am. Jur. 2d _Sheriffs, Police, and Constables_ § 36 (2008).

"[A] peace officer ordinarily has power of arrest only in the territory of the governmental unit by which he was appointed." _State v. Heredia_, 252 Ga. App. 89, 90 (2001); _see_ Ga. Const. Art. 9, § 2, ¶ 3(b); _see_ _Hastings v. State_, 211 Ga. App. 873, 874 (1994)(delineating exceptions to this rule for certain traffic offenses and where an officer is in "hot pursuit" of a fleeing suspect).

Because the warrants were ineffective on their face, the Court need not consider Brown's argument that the warrants were invalid because they were procured for malicious purposes, based on incomplete, misleading disclosures to

13

Judge Fry. Because the warrants were invalid, they do not insulate Purcell or Byerly from liability for Brown's § 1983 claim.

## ii. Probable Cause Inquiry

"[W]hile the [Supreme] Court has expressed a preference for the use of arrest warrants when feasible . . . it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant." Gerstein v. Pugh, 420 U.S. 103, 113 (1975). It is appropriate for the Court to look to the common law in interpreting the Fourth Amendment. Id. at 114.

"An arrest without a valid warrant to detain the defendant places the detention in the same category as an arrest without a warrant." Grant v. State, 152 Ga. App. 258, 258 (1979). In evaluating the factual basis for a probable cause determination, the standards are not relaxed where an arrest is made without a warrant (or based on an ineffective warrant), as compared with the analysis that governs where a valid warrant is obtained from a neutral magistrate. Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 565-66 (1971), abrogated on other grounds by Arizona v. Evans, 514 U.S. 1, 13-14 (1995).

14

> It is basic that an arrest with or without a
> warrant must stand upon firmer ground than mere
> suspicion, see Henry v. United States, 361 U.S.
> 98, 101, though the arresting officer need not
> have in hand evidence which would suffice to
> convict. The quantum of information which
> constitutes probable cause — evidence which would
> "warrant a man of reasonable caution in the
> belief" that a felony has been committed, Carroll
> v. United States, 267 U.S. 132, 162 — must be
> measured by the facts of the particular case.

Wong Sun v. United States, 371 U.S. 471, 479 (1963).

The subjective intentions of an arresting officer "play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996). "Instead, an arrest will be upheld if the objective circumstances justify the arrest." United States v. Jones, 377 F.3d 1313, 1314 (11th Cir. 2004)(per curiam).

The Court's evaluation is guided by "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175 (1949). Nonetheless, "it is incumbent upon law enforcement officials to make a thorough investigation and exercise reasonable judgment before invoking the awesome power of arrest and detention." Moore v. Marketplace Rest., Inc., 754 F.2d 1336, 1346 (7th Cir. 1985).

A probable cause determination must be based on the

15

totality of the circumstances, based on all the relevant information in the officer's possession. United States v. Lindsey, 482 F.3d 1285, 1290 (11th Cir. 2007). "As a corollary . . . of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." Bigford v. Taylor, 834 F.2d 1213, 1218 (5th Cir. 1988). Where "[m]inimal further investigation . . . would have reduced any suspicion created by the facts the police had discovered[,]" probable cause is lacking. Id. at 1219.

"A person commits the offense of deposit account fraud when such person makes, draws, utters, executes, or delivers an instrument for the payment of money on any bank or other depository in exchange for a present consideration or wages, knowing that it will not be honored by the drawee." Ga. Code Ann. § 16-9-20.

Smith and Byerly submit that Brown violated this statute. As Defendants note, where one knowingly postdates a check without sufficient funds to cover the draft, and fails to call attention to this fact to the payee, the drawer of the check violates the law.

16

> "It has been held that a worthless check statute is not violated by the making or delivering of a postdated check if the payee accepts it <u>knowing</u> that it is postdated and there is no other misrepresentation that the check is good or that the maker has sufficient money in his account. But <u>where one knowingly and intentionally issues a postdated check</u> in the regular course of business <u>without having sufficient funds</u> in or credit with the bank for the payment on presentation thereof, <u>and without calling to the attention of the payee the fact that the check is postdated or arranging with the payee to hold the check</u>, the maker of the check is guilty of the crime denounced by the worthless check statute."

Galbreath v. State, 193 Ga. App. 410, 415 (1989)(quoted source omitted).

Relatedly, Purcell argues that Brown cannot recover because there was probable cause to believe this law was violated, given that Brown wrote three checks, totaling over $25,000, which were dishonored due to insufficient funds. According to Purcell, Brown has not asserted that Purcell presented the checks for payment prior to the dates written on the checks by Brown. Purcell's lawyer obtained records from Fifth Third Bank, showing the dates printed on the checks and the dates they were posted to the account on which they were drawn. Dkt. No. 30, Ex. A. The bank records show that the checks did not post to the account until after the dates written on the checks. Thus, Purcell argues, there was

17

probable cause to believe Brown violated the statute even if she did postdate the checks.

Brown rejoins that Purcell agreed to accept the postdated checks at issue, and throughout their business relationship, with a promise to pay in the future. Brown contends that Byerly knew that Purcell accepted the checks postdated, because Brown's brother told him this fact. Plaintiff also avers that she told Byerly personally that the postdated checks were given to Purcell with a promise to pay in the future, not in present consideration for the meat Purcell had delivered to the warehouse Brown used in Blackshear.

> At best, there is implied in the issuance of the checks a promise to cover the drafts when they were presented in the future. Such a promise of future performance cannot serve as a basis for a bad check charge. . . . As noted in LaFave and Scott, Criminal Law, § 92, if a check is postdated, or if the giver of the check states that he has not enough money in the bank to cover it though he expects to have it by the time the check is presented for payment, there can be no implied representation that there is now enough on deposit to cover the check.

Bivens v. State, 153 Ga. App. 631, 632 (1980)(citations omitted); see also Young v. State, 265 Ga. App. 425, 427 (2004).

As the above cited authorities make clear, if the checks

18

were written for future consideration, as Brown maintains, there was no "present consideration" under the statute.

Purcell also submits that it does not matter whether Brown sent a bank check to pay for two of the returned checks, because <u>three</u> checks were dishonored. Again, this fact is irrelevant. Based on all the information allegedly known to Byerly, the fact that a check was dishonored by the bank, in and of itself, does not furnish probable cause that Brown committed the crime of deposit account fraud. If there was no present consideration, there was no probable cause for arrest under the law.

> Probable cause is absent "when the circumstances are such as to satisfy a reasonable [person] that the accuser had no ground for proceeding but his desire to injure the accused." . . . The determination is dependent upon whether the facts as they appeared at the time of instituting the prosecution were such as to lead a person of ordinary caution to entertain a belief that the accused was guilty of the offense charged.

<u>Wal-Mart Stores v. Blackford</u>, 264 Ga. 612, 613-14 (1994).

"In other words, the question is, not whether plaintiff was guilty, but whether defendants had <u>reasonable cause to so believe</u> — whether the circumstances were such as to create in the mind of defendants a <u>reasonable belief</u> that there was probable cause for the arrest and prosecution." <u>Adams v. Carlisle</u>, 278 Ga. App. 777, 782 (2006).

19

> And even if a defendant has probable cause to
> initiate a criminal proceeding, if afterward, the
> defendant "acquired knowledge, or the reasonable
> means of knowledge, that the charge was not well
> founded, his continuation of the prosecution is
> evidence of the want of probable cause, requiring
> that the question be submitted to the jury.". .
> . No probable cause exists if a defendant "knew
> that the facts stated to the law enforcement
> official were false or if he failed to make a
> fair, full, and complete statement of the facts
> as they existed, or if he concealed facts. The
> defendant's belief then could not possibly be
> 'honest' or 'reasonable.'"

Horne v. J.H. Harvey Co., 274 Ga. App. 444, 448 (2005)

(internally quoted sources omitted).

"While 'the defendant is not necessarily required to

verify his information, where it appears to be

reliable . . .[,] where a reasonable man would investigate

further before [pursuing a] prosecution, he may be liable for

failure to do so." Id. at 449 (internally quoted source

omitted). "Additionally, 'while not conclusive, the

dismissal of the charge is evidence that probable cause was

lacking.'" Simmons v. Mableton Fin. Co., 254 Ga. App. 363,

365 (2002)(quoting Melton v. La Calamito, 158 Ga. App. 820,

824 (1981)).

"Ordinarily, the question of want of probable cause is

one for jury resolution, unless from the undisputed facts it

is obvious to the court that it does or does not exist."

AO 72A
(Rev. 8/82)

Medoc Corp. v. Keel, 166 Ga. App. 615, 616 (1983).

The crime of deposit account fraud requires present consideration, which, according to the facts averred by Plaintiff, the Deputy knew that Brown denied. Ga. Code Ann. § 16-9-20(a). The physical presentation of a check, with a promise to pay later, does not equal present consideration. Viewing the evidence in the light most favorable to Brown, as the Court must at summary judgment stage, a prudent officer would not have concluded that there was probable cause to arrest Brown based on the facts known to Byerly, at least absent further investigation.[10]

---

[10]
Significantly, the relevant statute sets out what constitutes "prima facie" evidence of the crime of deposit account fraud when "payment is refused by the drawee for lack of funds upon presentation within 30 days after delivery and the accused" or her agent does not tender the amount due and a service charge "within ten days after receiving written notice that payment was refused upon such instrument." Ga. Code Ann. § 16-9-20.
Specifically, the statute provides a detailed form notice that puts the drawer on notice that

Unless this amount is paid in full within the specified time above, a presumption arises that you delivered the instrument(s) with the intent to defraud and the dishonored instrument(s) and all other available information relating to this incident may be submitted to the magistrate for the issuance of a criminal warrant.

Ga. Code Ann. § 16-9-20(a)(2)(B).
Defendants have presented no evidence that such a notice (that is, one conforming to the statutory requirements) was ever sent by Purcell to Brown. If Purcell did submit such evidence to Byerly, that would be significant to the Court's probable cause analysis. However, lacking such evidence, if a jury credits the evidence submitted by Plaintiff, it could reasonably conclude that no probable cause existed for Brown's arrest and detention.

21

AO 72A
(Rev. 8/82)

Byerly has not denied that he received pertinent evidence from Brown and Joyner casting doubt on Brown's guilt. And there is no evidence that, after receiving this information, Byerly made any further inquiry with Purcell regarding his recollection with respect to any agreement Purcell made with Brown regarding the postdated checks.

In sum, there is a genuine issue of material fact regarding whether the checks written by Brown were given in "present consideration" for the meat delivered by Purcell. Present consideration may exist where the interval between delivery of goods and delivery of check "is slight and the exchange can be characterized as a single contemporaneous transaction." Bowers v. State, 248 Ga. 714, 715 (1982)(as a matter of law, two month interval too long to constitute present consideration). The facts asserted by Plaintiff may establish a violation of the Fourth Amendment, if credited by the jury. According to Brown, she was arrested and detained by the Seminole County Sheriff's Department at the insistence of Deputy Byerly. Therefore, Byerly may be liable for seizing Brown unreasonably.

22

## B. State Actor Analysis:  Sufficient Evidence of a Conspiracy?

Even assuming there was an underlying violation, Purcell contends that he cannot be liable under § 1983 because he was not a state actor.  To establish liability for a constitutional claim under § 1983, a plaintiff must prove "state action," or conduct that is "fairly attributable to the State."  Lugar v. Edmondson Oil Co., 457 U.S. 922, 936-37 (1982).  Two requirements must be met to demonstrate "fair attribution."

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

Id. at 937.

In other words, wrongful private conduct is not actionable under § 1983.  Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1277 (11th Cir. 2003).  "Only in rare circumstances can a private party be viewed as

23

a 'State actor' for section 1983 purposes." Harvey v.
Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992).

As Purcell notes, merely reporting a crime to the police does not make a private citizen a state actor. "Providing false information to an arresting officer is not, by itself, sufficient to state a claim against that private party under § 1983." Boykin v. Blooomsburg Univ. of Penn., 893 F. Supp. 409, 417 (M.D. Pa. 1995); Woods v. Valentino, 511 F. Supp. 2d 1263, 1274 (M.D. Fla. 2007); Moore, 754 F.2d at 1352.

Nonetheless, where it is shown that a private party was involved in a conspiracy with a governmental official to deprive another of his constitutional rights, that person may be liable under § 1983. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

The Court notes that conclusory and unsupported allegations of a conspiracy cannot withstand summary judgment. Henzel v. Gerstein, 608 F.2d 654, 659 (5th Cir. 1979). "A party may not cry 'conspiracy' and throw himself on the jury's mercy." Gramenos v. Jewel Cos., 797 F.2d 432, 436 (7th Cir. 1986). But evidence of a conspiracy "must often be met by circumstantial evidence; conspirators rarely formulate their plans in ways susceptible of proof by direct evidence." Crowe v. Lucas, 595 F.2d 985, 993 (5th Cir. 1979)

24

(circumstantial evidence of meetings and direct evidence of illegal arrest of plaintiff sufficient). Undoubtedly, conspiracies are usually "stuff of the night, always covert, always secretive." Burke v. Town of Wapole, Civ. Action No. 00-10376-GAO, et al., 2003 U.S. Dist. LEXIS 24896 at *57 n.105 (D. Mass. Oct. 6, 2003).

A § 1983 plaintiff need not produce a "smoking gun." Instead, "nothing more than an 'understanding' and 'willful participation' between private and state defendants is necessary to show the kind of joint action that will subject private parties to § 1983 liability." Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir. 1990); Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)(internal citations omitted); Hampton v. Hanrahan, 600 F.2d 600, 620-21 (7th Cir. 1979), rev'd on other grounds, 446 U.S. 754 (1980).

In short, in weighing conspiracy averments, the Court should consider whether the plaintiff has pointed to specific facts tending to show joint action, concerted effort, or a general understanding between the private citizen and the governmental official. Yet, the conspirators need not know that their conduct is unlawful. Specific intent is not required, and § 1983 "should be read against the background of tort liability that makes a man responsible for the

25

natural consequences of his actions." <u>Monroe</u>, 365 U.S. at 187.

Turning to the specific grounds for holding Purcell liable as a state actor, Brown contends that Purcell was a state actor under the "joint nexus" test. <u>Focus on the Family</u>, 344 F.3d at 1277. According to Brown, Byerly knew that the payment sought over the third check far exceeded the amounts on the warrant applications made by Byerly. Brown posits that Defendants' extreme conduct to extort this additional money from Brown shows that Deputy Byerly "so far insinuated [him]self into a position of interdependence with [Purcell] that [he] was a joint participant in the enterprise[,]" establishing liability under the joint nexus test. <u>Id.</u> (quoted source omitted).

Brown's brother has provided an affidavit stating that, based on his phone conversations with Purcell, Purcell "remained intimately aware of everything that Defendant Byerly did regarding seeking warrants and forcing payment on invoices on which Defendant Purcell had not taken any previous action." Dkt. No. 48, Ex. A, C. David Joyner Aff. ¶ 15. Further, there is some evidence that Purcell allowed Brown to be arrested even though he knew that Brown had told him that she did not have sufficient funds in the bank to

AO 72A
(Rev. 8/82)

cover the checks that bounced.

Without Byerly's partnership with Purcell, Brown argues, Byerly could not have sought the warrants and prolonged Brown's incarceration. Brown asserts that she was not released until her family paid certain outstanding bills to Purcell. If such sums were paid directly to Purcell, it provides some circumstantial evidence of Purcell's involvement in the conspiracy, because he would have had to notify either Byerly or the Seminole County Jail to release Brown after receiving payment.

Brown claims that the Florida authorities would not have continued to confine her without directions from Byerly and Purcell. According to Brown, the Seminole County Sheriff's Department depended on Byerly to inform them about when they could release Brown, which was only permitted once the "fleecing had transpired," as Plaintiff puts it. Brown contends that this was not mere approval, but instead required continued cooperation by Byerly and Purcell. Brown maintains that Byerly exercised no independent judgment, and that Purcell could not have succeeded in his scheme without the knowing assistance of Byerly. These facts provide circumstantial evidence of a conspiracy and an organized scheme, implying state action by Purcell.

27

In this case, there is some evidence that Purcell did more than just give erroneous information to the Byerly, who then was free to make an independent determination about whether to arrest Brown. Butler v. Goldblatt Bros., Inc., 589 F.2d 323, 326 (7th Cir. 1978). In contrast to Butler, Brown contends that Purcell intentionally misled Byerly about the true state of the facts initially. Thereafter, according to Brown, Purcell directed Brown's arrest by Byerly, with the deputy's knowledge that Brown asserted that she delivered the checks to Purcell with a future promise to pay.

Where there is evidence of more than cooperative involvement of a private entity and law enforcement, and the private party directs the manner of arrest, there is a genuine issue of material fact precluding summary judgment. United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-47 (9th Cir. 1989)(en banc).

Purcell contends that Brown's brief is based on bare speculation that he schemed with Byerly to have Brown arrested and extorted. Purcell complains that Brown has not produced evidence of any communications that Purcell had with Byerly to that effect. However, direct evidence of an illegal conspiracy is not available in most cases. Instead, a conspiracy may be shown with indirect evidence. Here,

28

Brown has asserted that Purcell and Byerly knew that the criminal accusations against her were false, but proceeded anyway. <u>Boykin</u>, 893 F. Supp. at 417; <u>Mark v. Furay</u>, 769 F.2d 1266, 1273-74 (7th Cir. 1985).

In short, Brown has submitted some evidence that suggests that Purcell and Byerly may have been engaged in a joint undertaking to make Brown pay invoices not yet due to Purcell, on pain of an indefinite incarceration. This satisfies the joint nexus test, and is sufficient to withstand summary judgment. Purcell may escape liability as to Brown's § 1983 claim at trial if he can show an innocent explanation for his conduct, but summary judgment is not due in his favor just because such an explanation might exist. <u>Bendiburg</u>, 909 F.2d at 469.

## C. Qualified Immunity: Was the Law Clearly Established?

Byerly has moved to dismiss Brown's complaint under Federal Rule of Civil Procedure 12(c), based on qualified immunity. Qualified immunity protects state actors from civil liability unless the official is obviously incompetent, knowingly violates the law, or if his actions "violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v.</u>

29

Fitzgerald, 457 U.S. 800, 818 (1982); Malley v. Brigg, 475 U.S. 335, 341 (1986).

The plaintiff must demonstrate that the law was clearly established at the time of the averred violation. Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996). Therefore, "the salient question . . . is whether the state of the law in [June 2005] gave [Byerly] fair warning that [his] alleged treatment of [Brown] was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 741 (2002).

The Supreme Court has cautioned against requiring that the prior law be clearly established in cases with "fundamentally similar" factual scenarios. United States v. Lanier, 520 U.S. 259, 270-71 (1997). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope, 536 U.S. at 741.

> "[C]learly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but is to say that in light of pre-existing law the unlawfulness must be apparent."

Anderson v. Creighton, 483 U.S. 635, 640 (1987)(citations omitted).

30

In this Circuit, in addition to the constitution and relevant federal statutes, law is also "clearly established" by the relevant decisions of the United States Supreme Court, the Eleventh Circuit, as well as those of the former Fifth Circuit. Courson v. McMillian, 939 F.2d 1479, 1497-98 (11th Cir. 1991). The law may also be clearly established by the state supreme court in which the district court sits, where that court has addressed an issue relating to the constitutional determination at issue, at least where the state court addresses a matter that the relevant federal appellate courts have not resolved. Id. at 1498 n.32.

Qualified immunity protects a governmental official when there is arguable probable cause for an arrest. If under all the facts known to the officer at the time of the arrest, a reasonable officer could have believed that probable cause was present, arguable probable cause exists. Durruthy v. Pastor, 351 F.3d 1080, 1089 (11th Cir. 2003).

To be shielded by qualified immunity, the government official must first show that he was acting within the scope of his discretionary authority during the incident in question. Brown concedes that Byerly was acting within the scope of his discretionary authority because investigating

31

crimes, including possible bad check writing, is within a deputy sheriff's job description. O'Rourke v. Hayes, 378 F.3d 1201, 1205 (11th Cir. 2004). Additionally, the task was carried out in a manner in which Byerly had the power to utilize, because procuring warrants for suspected criminal activity is a routine responsibility for a deputy sheriff. Id.[11]

The burden then shifts to the plaintiff to show that immunity is not appropriate. Id. at 1206. The Court must determine whether the averments, if true, establish a constitutional violation. If so, the Court must then consider whether the right was clearly established. Id. In the previous sections, the Court concluded that the facts as alleged by Plaintiff establish a constitutional violation. The Court will now consider whether the law was clearly established at the time of the arrest and incarceration, so that Byerly was on notice that his conduct violated Brown's rights.

In making this determination, the Court must decide whether a reasonable deputy sheriff in Camden County,

---

[11]

At this stage of the inquiry, the Court looks only at the general nature of the conduct, putting aside any question regarding whether the challenged action was taken for an unconstitutional purpose. Id. at 1205-06.

32

Georgia, in 2005, had fair warning that "objective circumstances" did not justify the arrest. Jones, 377 F.3d at 1314; Whren, 517 U.S. at 813. It was clear at that time that an officer's probable cause determination had to be based on the totality of the circumstances, and include all the relevant information in the officer's possession. Deputy Byerly was on notice that he was not free to ignore facts that dispelled suspicion of Brown's guilt. United States v. Clark, 559 F.2d 420, 424 (5th Cir. 1977).

"A person commits the offense of deposit account fraud when such person makes, draws, utters, executes, or delivers an instrument for the payment of money on any bank or other depository in exchange for a present consideration or wages, knowing that it will not be honored by the drawee." Ga. Code Ann. § 16-9-20.

If Purcell simply presented evidence of the bounced checks to Byerly, and did not supply the deputy with any information about the circumstances surrounding the character of the checks or the details surrounding Purcell's transactions with Brown, then the deputy might have reasonably had some suspicion about whether the crime of deposit account fraud had been committed by Brown.

33

But here, Brown contends that she received a phone call from Byerly before her arrest, during which she informed the deputy "of her arrangements with Mr. Purcell to cover the checks and I reminded him that the checks were all postdated and [Purcell] had been accepting postdated checks for many months." Dkt. No. 48, Ex. C, Brown Aff. ¶ 12. According to Brown, Byerly knew that Purcell had accepted the checks for payment in the future when Byerly allegedly sought warrants for her arrest.

According to an affidavit filed by Brown's brother, C. David Joyner, a Georgia criminal defense attorney, he "explained in great detail to Defendant Byerly that three postdated checks did not constitute present consideration as required by the deposit account fraud statute." Dkt. No. 48, Ex. A, C. David Joyner Aff. ¶ 10. Joyner also told Byerly that Purcell had accepted many other postdated checks from Brown other than the ones at issue, but Byerly refused to listen and had Brown arrested. Dkt. No. 48, Ex. A, C. David Joyner Aff. ¶¶ 11-13.

Neither Purcell nor Byerly have submitted any evidence contradicting or denying that such statements were made to Byerly in the manner described Brown and Joyner. Thus, if Brown's version of the events is credited by the jury, Byerly

possessed information that tended to show that no crime had been committed because there was no "present consideration."

At the very least, the statements of Brown and Joyner would have led an officer of reasonable caution to investigate the matter further before arresting Brown, or seeking warrants for her arrest. <u>Wong Sun v. United States</u>, 371 U.S. 471, 479 (1963). The law was clearly established in 2005 that "present consideration" was an essential element of the crime of deposit account fraud. Ga. Code Ann. § 16-9-20; <u>Bowers v. State</u>, 248 Ga. 714, 715 (1982).

There is no evidence that Purcell sought any additional information from Byerly that might have reinforced the notion that Brown delivered the checks in present consideration for the meat delivered by Purcell. Given the facts known to Byerly, it would have been apparent in 2005 that such evidence was necessary to have arguable probable cause for Brown's arrest for deposit account fraud, if what Brown and Joyner have stated is true.[12]

---

[12]
As the Court has noted, there is no evidence that Byerly possessed any "prima facie" evidence of deposit account fraud, as such evidence is defined under Georgia Code § 16-9-20. Had Byerly obtained such evidence, arguably, that would have also insulated him from liability under the Fourth Amendment.

AO 72A
(Rev. 8/82)

## II. State Law Claims

Plaintiff has asserted state law claims against Defendants for false imprisonment, false arrest, malicious arrest, malicious prosecution, slander, intentional infliction of emotional distress (all against Purcell and Byerly only), and negligent hiring and retention (against Camden County and Smith only). Before addressing the merits of these causes of action, the Court will first discuss whether Byerly is immune from Brown's state law claims in his official capacity.[13]

## A. Sovereign Immunity

Under Georgia law, "[t]he doctrine of sovereign immunity, also known as governmental immunity, protects all levels of governments from legal action unless they have waived their immunity from suit." Cameron v. Lang, 274 Ga. 122, 126 (2001). "[S]uits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity." Donaldson v. Dep't of Transp., 262 Ga. 49, 56 (1992).

---

[13] As the Court discusses below, Camden County and Smith have demonstrated that the claims pled against them fail on the merits. Consequently, the Court has phrased the sovereign immunity question without regard to Camden County or Smith.

36

Brown argues that sovereign immunity was waived in this instance as to her claim against Byerly in his official capacity because Camden County purchased a policy of liability insurance. See Gilbert v. Richardson, 264 Ga. 744 (1994). Defendants have not denied that such a policy exists, but neither has Brown submitted evidence of the policy. As Brown notes, counsel for Defendants have listed Gemini Insurance Company as the insurer for Camden County and Byerly in the pretrial order. Dkt. No. 45 at 3. Plaintiff also reports that the carrier has written a letter confirming coverage.

Nonetheless, sovereign immunity is not an affirmative defense that must be demonstrated by Defendants. Rather, it is a privilege and the waiver of immunity must be shown by Plaintiff. Kelleher v. Georgia, 187 Ga. App. 64, 65 (1988); Ga. Dep't of Human Res. v. Poss, 263 Ga. 347, 348 (1993), overruled on other grounds by Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 272 Ga. 209, 210-11 (2000).

"And if waiver is based on the purchase of a policy of insurance, a showing must also be made that it would cover the occurrence forming the basis of a plaintiff's claim." Wendelken v. JENK LLC, 291 Ga. App. 30, 32 (2008).

In light of these authorities, the Court has

37

insufficient evidence before it to determine whether Byerly is liable in his official capacity. If such a policy of liability insurance exists, the parties are directed to submit evidence of the policy to the Court before the trial date set in this matter so the Court can determine whether the policy covers the incident at issue.

## B. Safe Harbor Provision of Georgia Code Section 16-9-20(h)(2)

In addition to the threshold matter of sovereign immunity, before proceeding to the merits of Brown's state law claims, the Court also notes that Georgia's deposit account fraud statute appears to provide an additional obstacle to any recovery on the state law claims under the facts asserted by Brown, to wit:

> In any civil action for damages which may be brought by the person who made, drew, uttered, executed, or delivered such instrument, no evidence of statements or representations as to the status of the instrument involved or of any collateral agreement with reference to the instrument shall be admissible unless such statements, representations, or collateral agreement shall be written simultaneously with or upon the instrument at the time it is delivered by the maker thereof.

Ga. Code. Ann. § 16-9-20(h)(2).

The Georgia Court of Appeals has further explained that:

38

> Georgia law formerly permitted malicious
> prosecution claims arising from bad check
> prosecutions where the facts and circumstances
> reflected that the check's drawer had no intent
> to defraud the check's recipient; however, in
> 1989, the Georgia legislature revised the law
> governing the issuance of bad checks. The new
> law drastically limited the circumstances under
> which a separate agreement made concerning a
> check may support a malicious prosecution action.
> . . .
> The check tendered by [the drawer] reflects no
> such statement, representation or collateral
> agreement, and [the plaintiff]'s pleadings make
> no reference to a simultaneous separate writing
> regarding the check. Thus, [the plaintiff]'s
> claim for malicious prosecution is, by statute,
> without evidentiary support.

Hartsfield v. Union City Chrysler-Plymouth, 218 Ga. App. 873,

875-76 (1995).

Consequently, under Georgia Code § 16-9-20(h)(2),

Brown's oral representations regarding her transaction with

Purcell are inadmissible to prove liability for her state law

causes of action.[14]  Nonetheless, as the Court explains

below, a number of Brown's claims are viable, independent of

---

[14]
 It is plain enough that the Georgia statute is a substantive rule of
law, meant to limit civil suits against the holders of bounced checks,
not a mere evidentiary rule.  If the latter were the case, of course,
the Federal Rules of Evidence would govern the admissibility of evidence
in this action.  But such a conclusion would be incongruent and
unwarranted in these circumstances.  The parol evidence rule is a
substantive rule of law, as is the Statute of Frauds.  Matthews v. Drew
Chemical Corp., 475 F.2d 146, 149 (5th Cir. 1973); 22 Charles Alan
Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5200
(1978)(citing 9 Wigmore on Evidence § 2454 (3d ed. 1940)).  The Georgia
statute here is aptly characterized as a statutory version of these long
standing rules of substantive contract law.

39

AO 72A
(Rev. 8/82)

that evidence.

## C. False Imprisonment, False Arrest, Malicious Arrest, and Malicious Prosecution

Under Georgia law, a person who is injured by the "improper use of the criminal process" has three possible causes of action. Reese v. Clayton County, 185 Ga. App. 207, 207 (1987). For the sake of clarity, these claims are best described as (1) malicious arrest, (2) malicious prosecution, and (3) false imprisonment.

However, some state law decisions have equated the tort of "false arrest" with "malicious arrest," while other authorities have treated the tort of false arrest as a close relative of the tort of false imprisonment.[15] Jacobs v. Shaw, 219 Ga. App. 425, 426 (1995); Ga. Code. Ann. §§ 51-7-1, 51-7-20, & 51-7-40; see also Charles R. Adams III, Georgia Law of Torts §§ 29-4 & 29-5 (2008); 35 C.J.S. False Imprisonment § 3 (2008). Helpfully, the causes of action are mutually exclusive, and "[o]nly one . . . will lie as to a particular defendant in particular circumstances." Reese,

---

[15] One commentator has attributed the confusion to "an error in the Official Code, which classifies the statute dealing with 'Malicious Arrest' under the heading 'False Arrest.'" Charles R. Adams III, Georgia Law of Torts § 29-4 at n.7 (2008).

AO 72A
(Rev. 8/82)

185 Ga. App. at 207.

Where a person is arrested under a void or invalid warrant, her only recourse is under the tort of false imprisonment, sometimes more specifically referred to as false arrest. Id. "The only essential elements for false imprisonment are (1) detention and (2) the unlawfulness thereof." Id. at 208 (citing Ga. Code Ann. § 51-7-20). "False imprisonment is an intentional tort and not a tort of negligence." Ridgeview Inst., Inc. v. Handley, 224 Ga. App. 533, 534 (1997). In contrast to the torts of malicious arrest and malicious prosecution, malice and a lack of probable cause need not be shown in a false imprisonment/false arrest cause of action. Westberry v. Clanton, 136 Ga. 795, 795 (1911); Drug Emporium, Inc. v. Peaks, 227 Ga. App. 121, 129 (1997).

Brown's claim is properly characterized as a false imprisonment/false arrest claim. Id.; Brown v. Super Discount Mkts., Inc., 223 Ga. App. 174, 175 n.2 (1996); 35 C.J.S. False Imprisonment § 3 (2008). Because the warrant Brown was arrested under was invalid, her malicious prosecution and malicious arrest claims fail as a matter of law. Perry v. Brooks, 175 Ga. App. 77, 77 (1985).

The Georgia Code provides a defense to law enforcement

41

officials in a false imprisonment action under certain circumstances:

> If imprisonment is by virtue of a warrant, neither the party who procured the warrant in good faith nor the officer who executed the warrant in good faith shall be liable for false imprisonment even if the warrant is defective in form or is void for lack of jurisdiction. In such cases, good faith must be determined from the circumstances.

Ga. Code Ann. § 51-7-21.

"Malice may . . . be inferred if defendant[s]' acts were wanton or were done with a reckless disregard for or conscious indifference to the rights of the plaintiff." K-Mart Corp. v. Lovett, 241 Ga. App. 26, 28 (1999)(quoted source omitted). "While 'the defendant is not necessarily required to verify his information, where it appears to be reliable . . .[,] where a reasonable man would investigate further before [pursuing a] prosecution, he may be liable for failure to do so." Horne v. J.H. Harvey Co., 274 Ga. App. 444, 449 (2005)(internally quoted source omitted).

Brown contends that both she and her brother told Byerly that Purcell accepted the checks for future consideration. Further, Brown's brother stated that he informed Byerly of the requirement of present consideration for the crime of deposit account fraud. There is some evidence that Byerly

42

acted maliciously, or in bad faith, in procuring Brown's arrest and incarceration. In view of all the circumstances, Byerly is not entitled to judgment as a matter of law on Brown's false imprisonment/false arrest claim based on the statutory "good faith" defense.

Brown's claim for false imprisonment/false arrest is supportable independent of any verbal communications she may have had with Purcell about her payment to him with respect to the checks that bounced. Brown has adduced evidence that Byerly and Purcell kept her incarcerated in a quasi-debtor's prison indefinitely until she and her family were able to raise more than $24,000 to pay Purcell for invoices that were not yet due. If this averment is true, it supports Brown's claim for false imprisonment/false arrest.[16]

Byerly and Purcell are entitled to judgment as a matter of law with respect to Brown's malicious arrest and malicious prosecution claims, but issues of fact remain in dispute with respect to Plaintiff's false imprisonment/false arrest claim against the men, precluding summary judgment as to that

---

[16]
 Also, the safe harbor of Georgia Code § 16-9-20(h)(2) has no relevance to the good cause inquiry under Georgia Code § 51-7-21, because the question there concerns whether there was good cause to believe that the criminal process was justified. What evidence is admissible in a later civil case relating to those events has no bearing on this question.

AO 72A
(Rev. 8/82)

claim.

## D. Slander

"Imputing to another a crime punishable by law" is slander under Georgia law. Ga. Code Ann. § 51-5-4(a)(1). As Purcell and Byerly point out, the truth of the statement made is an absolute defense to a defamation claim. Ga. Code Ann. § 51-5-6. Because there is a genuine issue of material fact regarding whether Brown wrote the checks in present consideration for the parties' exchange, the Court is unable to resolve the liability of Purcell and Byerly on this claim on summary judgment. Stalvey v. Atlanta Bus. Chronicle, Inc., 202 Ga. App. 597, 599 (1992).

The safe harbor provision of § 16-9-20(h)(2) does not alter the Court's analysis, because the truth of the statement is an affirmative defense. Defendants bear the burden of proving that Plaintiff committed the crimes at issue, and Plaintiff need not resort to her verbal communications with Purcell to prove an essential element of her claim for slander. Moreover, Purcell and Byerly have not argued that they are entitled to summary judgment as to the charge that Brown committed theft by taking.

44

E. Intentional Infliction of Emotional Distress

To establish liability for intentional infliction of emotional distress under Georgia law, a plaintiff must show: (1) that the defendant acted intentionally, or in reckless disregard for the rights of others, (2) that the actions of the defendant would naturally humiliate, embarrass, frighten, or outrage the plaintiff, and (3) that the conduct caused the plaintiff's mental suffering. Moses v. Prudential Ins. Co. of Am., 187 Ga. App. 222, 225-26 (1988). To prevail on such a claim, a plaintiff must show that defendant's conduct was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Turnbull v. Northside Hosp., Inc., 220 Ga. App. 883, 884 (1996).

If Brown's allegations are true, Byerly and Purcell had Brown incarcerated indefinitely in the Seminole County Jail until she paid Purcell for bills not yet otherwise due. Brown contends that she spent six days in jail until she was able to come up with the approximately $24,000 demanded. Brown asserts that she was only able to get this sum together with her family's assistance. If these averments are true, the conduct of both Byerly and Purcell may have been sufficiently severe to make them culpable for intentionally

45

or recklessly inflicting emotional distress on Brown. <u>Adams</u> <u>v. Carlisle</u>, 278 Ga. App. 777, 792 (2006); <u>K-Mart Corp.</u>, 241 Ga. App. at 28.

## F. Negligent Hiring and Retention Claims

Brown contends that Camden County and Smith are liable for negligent hiring and retention of Byerly. According to Brown, Byerly incarcerated her for six days and extorted over $24,000 from Brown and her family to pay Purcell for invoices that were not yet due. If this allegation is true, it is some evidence in support Brown's claim for negligent hiring and retention because it shows that the deputy sheriff violated her rights.

"The appropriate standard of care in a negligent hiring/retention action is whether the employer knew or should have known that the employee was not suited for the particular employment." <u>Patterson v. Se. Newspapers, Inc.</u>, 245 (2000).

A law enforcement officer "wields enormous power and intimidation over those vulnerable citizens an officer is sworn to protect." <u>Harper v. City of East Point</u>, 237 Ga. App. 375, 378 (1999), <u>overruled in part by</u> <u>Munroe v.</u>

46

Universal Health Servs., Inc., 277 Ga. 861, 862-864 (2004).
Consequently, "his employer owe[s] a higher duty to protect
citizens from abuse of that power, a duty which private
employers do not share." Id.

A plaintiff need not demonstrate that the employee had
history of committing the precise tort or wrongdoing that
caused the plaintiff's injury. Munroe, 277 Ga. at 862-64.
Instead,

> a defendant employer has a duty to exercise
> ordinary care not to hire or retain an employee
> the employer knew or should have known posed a
> risk of harm to others where it is reasonably
> foreseeable from the employee's "tendencies" or
> propensities that the employee could cause the
> type of harm sustained by the plaintiff. "The
> employer is subject to liability only for such
> harm as is within the risk." Restatement
> (Second) of Agency, § 213 Comment (d).

Id. at 863.

Smith and Camden County posit that Brown has failed to
provide sufficient evidence that either Defendant knew or
should have known that Byerly posed a risk of committing the
unlawful behavior alleged in the case sub judice. The Court
agrees with Camden County and Smith that, at least with
respect to the materials submitted by Brown in opposition to
Defendants' motion for summary judgment, Brown has produced
insufficient evidence that Camden County or Smith should have

47

been aware of Byerly's "propensity to violate citizens' rights." Dkt. No. 1 ¶ 128.

Brown's only evidence supporting this claim shows that, before Byerly began working in Camden County, Byerly worked for the Glynn County Police Department. According to the evidence adduced by Brown, two civil rights actions were filed against Byerly when he worked in Glynn County, and both cases settled prior to trial. Hamilton v. Glynn County, CV291-101 (S.D. Ga.); Mosley v. Glynn County, CV290-299 (S.D. Ga.).

Brown argues that the allegations against Byerly were serious, although she does not describe the facts of those lawsuits at all. The mere fact that a law enforcement officer was a defendant in two prior civil cases, and that those cases settled prior to trial, does not make it "reasonably foreseeable . . . that the employee could cause the type of harm sustained by the plaintiff." Underberg v. S. Alarm, Inc., 284 Ga. App. 108, 110 (2007).

Because Brown has not described the facts of the other civil suits, it is not apparent that those cases involved situations even remotely similar to the circumstances that allegedly transpired here. Indeed, it is common for law

48

enforcement officials to become civil defendants in cases brought by disgruntled suspects for any number of reasons, meritorious or not. The fact that two such cases were filed against Byerly, and later settled, is insufficient to create a triable issue of fact regarding Brown's negligent hiring and retention claims. Summary judgment is appropriate in favor of Camden County and Smith as to these claims. <u>See</u> <u>Govea v. City of Norcross</u>, 271 Ga. App. 36, 45-47 (2004).

## CONCLUSION

For the reasons discussed above, Purcell's summary judgment motion is **GRANTED** in part, and **DENIED** in part. Dkt. No. 15. Byerly's motion to dismiss based on the defense of qualified immunity is **DENIED**. Dkt. No. 31. The summary judgment motion filed by Camden County, Smith, and Byerly is **GRANTED** in part, and **DENIED** in part. Dkt. No. 36.

The only claims Brown has pressed against Camden County and Smith, state law tort claims for negligent hiring and retention, fail as a matter of law. Accordingly, the Clerk is **DIRECTED** to enter judgment in favor of these Defendants. Yet, genuine issues of material fact remain in dispute regarding the liability of Purcell and Byerly for violating

49

Brown's Fourth Amendment rights, as well as for Brown's state law claims for false imprisonment/false arrest, slander, and intentional infliction of emotional distress. The other claims asserted by Brown, under the Eighth Amendment, the Fourteenth Amendment, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and the state law claims for malicious arrest and malicious prosecution, fail as a matter of law, and Purcell and Byerly are entitled to summary judgment on those claims.

**SO ORDERED**, this __15__ day of October, 2008.


_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)